# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

HERMAN CALKINS,

      Plaintiff,

v.                             Case No. 1:04-00300

MIDLAND FUNDING NCC-2 CORP. et al.,

      Defendants.

                              /

### ORDER DENYING PLAINTIFF'S "MOTION FOR LEAVE TO AMEND COMPLAINT," DENYING PLAINTIFF'S "MOTION TO STRIKE . . .," AND GRANTING DEFENDANTS' "MOTION FOR SUMMARY JUDGMENT"

Pending before the court is a "Motion for Summary Judgment," filed by Defendants Midland Funding NCC-2 Corp. ("Midland Funding") and Midland Credit Management, Inc. ("Midland Credit") on May 26, 2005.  Also pending before the court are two motions filed by Plaintiff Herman Calkins on December 14, 2005: a motion to amend the complaint and a motion to strike certain exhibits attached to Defendants' motion for summary judgment.  The court conducted a hearing on the motions on January 11, 2006.  For the reasons stated below, the court will grant Defendants' motion and will deny Plaintiff's motions.

## I.  INTRODUCTION[1]

Midland Funding is a wholly owned operating subsidiary of Encore Capital Group, Inc.  ("Encore").  (Def.'s Mot. Br. at 2.)  Encore and its subsidiaries, including Midland

---

[1]Most of the facts cited in the Introduction and Background section were asserted in Defendants' motion for summary judgment, but do not appear to be disputed by Plaintiff.  Rather, the parties seem to agree that the issues before the court are primarily questions of law, and the facts are thus provided for context.

Funding, acquire charged-off receivable portfolios at discounts from their face values.[2]
(Def.'s Mot. Br. at 2.)  The receivable portfolios that Encore purchases consist primarily
of charged-off domestic consumer credit from across the United States purchased from
national financial institutions, major retail corporations and other owners of such
portfolios.  (Def.'s Mot. Br. at 2-3.)  According to Defendants, Midland Funding does not
engage in the business of collecting debt.  (Def.'s Mot. Br. at 3.)  Instead, Midland Credit
is the entity that attempts to collect on accounts in the various portfolios purchased by
Encore and its wholly owned subsidiaries.  (Def.'s Mot. Br. at 3; Pl.'s Statement of Facts
¶ 6.)  The instant lawsuit involves Midland Credit's attempts to collect on an account
owned by Midland Funding and owed by Plaintiff Herman Calkins.

## II.  BACKGROUND

On November 13, 2000, Plaintiff purchased a used 1997 Oldsmobile automobile
from Crippen AutoMall in Lansing, Michigan for $15,962.90.  (Def.'s Mot. Br. at 4.)
Plaintiff financed $14,874.97 toward the purchase of the car through a Motor Vehicle
Installment Contract ("Installment Contract") with Crippen Automall, who immediately
assigned the Contract to Household Automotive Finance Corporation ("Household").
(Def.'s Mot. Br. at 4.)   Plaintiff subsequently defaulted on the loan, and Household
repossessed the car on December 11, 2001.   (Def.'s Mot. Br. at 4.)   Household sold
the car at an auction for $5,000, leaving $10,208.11, which Plaintiff owed to Household.
(Def.'s Mot. Br. at 4.)

---

[2]Encore is a Delaware corporation with its principal offices in San Diego,
California.  Encore's principal assets are its investments in various wholly owned
subsidiaries.  (Def.'s Mot. Br. at 2.)

2

At some point, Household sold Plaintiff's account to Palisades Acquisition I, LLC ("Pallisades"). (Def.'s Mot. Br. at 5.) On November 25, 2003, Midland Funding executed a Purchase and Sale Agreement (the "Purchase Agreement") with Palisades, whereby Midland Funding acquired a portfolio of charged-off accounts, including Plaintiff's. (Def.'s Mot. Br. at 5.) Midland Credit thereafter attempted to collect payment on the balance of the installment credit still owed. (Def.'s Mot. Br. at 5.) A few months later, Plaintiff initiated this action in the United States District Court for the Western District of Michigan.[3]

Defendants filed their motion for summary judgment on May 26, 2005. On June 30, 2005, Plaintiff contemporaneously filed a response to the summary judgment motion and a motion for discovery pursuant to Federal Rule of Civil Procedure 56(f). Plaintiff's motion was granted in part on August 9, 2005, and the parties conducted limited discovery on certain specified issues relating to Defendants' motion. (*See* 8/9/05 Order). After the case was reassigned to this court, (*see* 9/09/05 Administrative Order), the court ordered Plaintiff's June 30, 2005 response brief and Defendants' July 14, 2005 reply brief stricken from the docket, and allowed the parties a chance to resubmit them after incorporating the requested discovery into their analysis. (*See* 10/13/05 Order.) The parties timely filed their updated briefs.[4]

_____

[3]The case was transferred to this court on September 9, 2005 pursuant to Administrative Order No. 05-102.

[4]The first page of Plaintiff's updated response brief requests that the court allow discovery under Federal Rule of Civil Procedure 56(f). At the January 11, 2006 hearing, Plaintiff's counsel confirmed that this request was a typographical error, carried over from its initial response brief. Plaintiff's counsel clarified that no further discovery was necessary in order to respond to Defendants' summary judgment motion.

Plaintiff also filed a motion to amend his complaint and a motion to strike on December 14, 2005.

### III.  MOTION TO AMEND

On December 14, 2005, Plaintiff filed a motion to amend the complaint, which consists of a total of one paragraph of analysis, and presents no specific explanation of how the proposed complaint differs from the original complaint.  Plaintiff accurately sets forth the liberal standard of review for motions to amend, but provides no reasoned application of that standard to the facts of this case.[5]  On this basis alone the court is inclined to deny the motion.  Additionally, however, the motion is also untimely, and Plaintiff has presented no explanation for his failure to move earlier.  *See Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001) ("When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier.") (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)).  Plaintiff's motion is filed over nineteen months after this action was initiated, seven months after the motion for summary judgment was filed, and two months after the deadline for discovery related to the motion for summary judgment.  Plaintiff presents no excuse for this undue delay, and the court can discern no reason why the motion could not have been brought earlier.  This delay has likely prejudiced Defendants in that, by moving earlier, it is possible that Plaintiff's limited discovery may have been tailored or focused differently.

------

[5]Instead, Plaintiff states that the proposed amended complaint seeks to correct "perceived technical flaws" articulated by Defendants in their motion for summary judgment.  (Pl.'s Mot. Br. at 4.)

Finally, the motion is futile because, even if the court were to grant the motion, it would not affect the analysis of the summary judgment motion.  Indeed, having reviewed the proposed amended complaint along with Defendants' objections, the court finds that the proposed amendments do very little to affect the substance of Plaintiff's claims.  Rather, the proposed amended complaint appears to clarify Plaintiff's claims and, perhaps, adjust a few minor technical issues in the original complaint.[6]  Most, if not all, of these amendments have been subsequently clarified in the various briefs filed since the time of the original complaint and are simply not necessary to form the basis of an amended pleading.

Because the Plaintiff's untimely motion to amend does not present a reasoned analysis to allow the proposed amendment and because the amended pleading is futile, the court will deny the motion.  *See General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (citing *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)) ("In the decision whether to permit an amendment, some of the factors which may be considered by the trial court are undue 'delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'").

---

[6]For example, in Plaintiff's original complaint, the title of Count I, asserted under the Fair Debt Collection Practices Act (the "FDCPA"), indicated parenthetically that the count was brought against both Midland Funding and Midland Credit, but the substantive text of the count only referred to Midland Credit.  (*See* Comp. ¶¶ 30-32.) The proposed amended complaint, however, brings two separate counts under the FDCPA, one against Midland Funding and one against Midland Credit.  (*See* Am. Comp. ¶¶31-38.)

## IV.  Motion for Summary Judgment

Plaintiff's complaint contains claims brought under the Fair Debt Collection

Practices Act (the "FDCPA"), 15 U.S.C. § 1692 (Count I), the Motor Vehicle Sales

Finance Act ("MVSFA"), Mich. Comp. Laws § 492.101 (Count II), the Michigan Credit

Reform Act, Mich. Comp. Laws § 445.1851 (Count III), the Michigan Occupational

Code, Mich. Comp. Laws 339.901 (Count IV), and the Michigan Dept Collection

Practices Act (Count V).  Plaintiff also seeks class action status for persons who owe

money on accounts owned by Midland Funding.  (Comp. ¶ 22.)

### A.  Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when

there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has

carried its burden of showing that the pleadings, depositions, answers to interrogatories,

admissions and affidavits in the record construed favorably to the non-moving party, do

not raise a genuine issue of material fact for trial, entry of summary judgment is

appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex

Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient

disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 251-52 (1986).  The existence of some factual dispute, however, does not

defeat a properly supported motion for summary judgment; the disputed factual issue

must be material.  *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks

whether reasonable jurors could find by a preponderance of the evidence that the

plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").  A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).  In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party.  *Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004) ("[W]e must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'")  The court does not weigh the evidence to determine the truth of the matter, but must determine if the evidence produced creates a genuine issue for trial.  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

**B.  MVSFA**

**1.  The Existence of a Private Right of Action**

The gravamen of Plaintiff's complaint is that Midland Funding charged Plaintiff fees which were not authorized because Midland Funding is not licensed under the MVSFA.  (Comp. ¶ 35.)  Plaintiff asserts that, due to Midland Funding's lack of license, "[a]ll charges apart from the principal balance are forfeit."  (*Id.*)[7]

---

[7]The court notes that in the proposed amended complaint, Plaintiff seeks to delete this assertion.  (*See* First Am. Comp. at ¶¶ 39-43.)  It is not entirely clear why Plaintiff seeks to delete this sentence (other than perhaps because of the apparent fact that it appears Plaintiff has not actually paid any of these charges), nor is it clear why

Defendants argue that, even if Midland Funding were required to be licensed under the MVSFA (which, as discussed below, Defendants dispute), the MVSFA does not provide for a private right of action under which Plaintiff can sue Defendants. Michigan courts have not spoken on this issue, and Defendants rely primarily on a decision from the United States District Court for the Western District of Michigan, *Lozada v. Dale Baker Oldsmobile, Inc.*, 136 F. Supp. 2d 719 (W.D. Mich. 2001).

In *Lozada*, the plaintiffs claimed that when they purchased their vehicles the defendant failed to provide a copy of the installment sales contracts to them, which is required under the MVSFA. *See id.* at 726-727 (citing Mich. Comp. Laws 492.112(c)). The plaintiffs in *Lozada* relied on the same provision which Plaintiff cites in this case to argue the existence of a private right of action under the MVSFA. Specifically, the plaintiffs cited Mich. Comp. Laws § 492.131(d), which provides:

> Whenever in an installment sale contract under this act the seller or any subsequent holder has charged, contracted for, collected, or received from the buyer prohibited costs or charges in connection with the contract, all the costs and charges in connection with the contract, other than for insurance, shall be void and unenforceable and any amounts paid by the buyer for such costs and charges, other than insurance, shall be applied on the principal of the contract.

Mich. Comp. Laws § 492.131(d). Under the plaintiff's theory in *Lozada*, because the defendant did not provide a copy of the installment contract as is required under Mich. Comp. Laws § 492.112(c), all finance charges which it assessed against the plaintiff

Defendants object to its deletion. Further, the assertion is not completely deleted, as it is somewhat subsumed in the previous sentence of Plaintiff's proposed amended complaint, and Plaintiff certainly has not abandoned its argument that charges above the principal are not allowed for unlicensed entities under the MVSFA. This type of rearranging of paragraphs is an example of the modifications in the proposed amended complaint which really present no substantive alteration to the original complaint.

were "prohibited" and plaintiff could therefore recover the charges under Mich. Comp. Laws § 492.131(d).  *Lozada*, 136 F. Supp. 2d at 726.  The court rejected this contention, reasoning that the plaintiff's interpretation unreasonably stretched the words "prohibited charges," and that the term "prohibited charges" instead referred only to those charges which are expressly disallowed in Mich. Comp. Laws § 492.131(a).  *Id.* In so holding, the court soundly reasoned that:

> [While s]pecific remedial entitlements are provided in various other sections of the [MVSFA,] no broad general civil remedy is described for violations of the act.  Instead, the MVSFA contains a broad criminal penalty section for all willful violations of the act, which authorizes criminal sanctions, including imprisonment and fines.  *See* Mich. Comp. Laws § 492.137.  The inclusion of section 492.137 implies that the legislature intended that the act would be largely enforced criminally and did not intend expansive civil penalties unless specifically authorized by other provisions.

*Id.*

This court finds the reasoning of *Lozada* persuasive and, contrary to Plaintiff's attempts to distinguish *Lozada*, almost directly applicable to the facts in this case.  As in *Lozada*, Plaintiff interprets § 492.131(d) as creating a private cause of action for, essentially, any violation of the MVSFA.  Plaintiff argues that because Midland Funding was not licensed, all of its assessed charges were "prohibited" and should be declared void.  Plaintiff cites Mich. Comp. Laws § 492.115(a) for the proposition that "no installment sales contract shall be sold to any person doing business in this state who is not licensed under the provisions of this act."  (Pl.'s Resp. Br. 10.)  Assuming, *arguendo*, that Midland Funding violated this provision by acquiring Plaintiff's defaulted account, this does not mean that (1) the violation of this provision necessarily means

Midland Funding cannot collect charges above the principal[8] or that (2) a private cause of action exists for violating § 492.115(a).

Although there are no Michigan cases on point, the court finds it likely that Michigan courts would apply the same reasoning as found in *Lozada* to hold that there is no private cause of action under the MVSFA for the failure to obtain a license.[9]   In order to determine whether a private cause of action exists, Michigan courts employ the following approach:

> If the common law provides no right to relief, and the right to such relief is instead provided by statute, then plaintiffs have *no* private cause of action for enforcement of the right *unless:* (1) the statute expressly creates a private cause of action or (2) a cause of action can be inferred from the fact that the statute provides no adequate means of enforcement of its provisions.  *Bell v. League Life Ins. Co.,* 149 Mich. App. 481, 482-483, 387 N.W.2d 154 (1986).  It follows that courts must dismiss a private cause of action under a statute creating a new right unless the statute expressly

---

[8]Plaintiff argues that "the MVSFA not only prohibits certain classes of charges (M.C.L. §§ 492.113, 492.116 and 492.117), but also charges imposed by those who have not brought themselves under the framework of the act (M.C.L. §§ 492.115 and 492.134)."  (Pl.'s Resp. Br. at 11.)  Plaintiff further claims that it is "expressly stated in the MVSFA itself . . . that all charges are unauthorized when imposed by an individual or entity that fails to obtain a required license."  (*Id.*)  Plaintiff, however, does not provide a citation to support this assertion.  Indeed, the only two citations provided do not "expressly" prohibit all charges by an unlicensed individual.  Rather, Mich. Comp. Laws § 492.115 only prohibits the *sale* of installment contracts to unlicensed buyers; it does not indicate the implications if such a sale is consummated. Similarly, Mich. Comp. Laws § 492.134 only prohibits refinancing charges and the acquisition of new contracts by persons whose previous licenses were expired, surrendered or revoked.  There is nothing in the MVSFA that directly, or "expressly," states that unlicensed individuals cannot charge any fees above the principal.

[9]The only Michigan court to even touch on the issue, reserved the question for another day.  *King v. Ford Motor Credit Co.*, 257 Mich. App. 303, 328, 668 N.W.2d 357, 371 (Mich. Ct. App. 2003) ("Because of our conclusion that extended service contracts do not fall within the purview of the MVSFA, we need not address the circumstances under which a private right of action may be maintained under the MVSFA, leaving resolution of that issue for another day.").

> created the private cause of action or the cause of action may be inferred
> because the statute does not provide adequate means to enforce its
> provisions. *Forster v. Delton School Dist.,* 176 Mich. App. 582, 585, 440
> N.W.2d 421 (1989).

*Pitsch v. ESE Michigan, Inc.*, 233 Mich. App. 578, 586-587, 593 N.W.2d 565, 570 (Mich.

Ct. App. 1999) (emphasis in original) (citing *Long v. Chelsea Community Hosp.,* 219

Mich. App. 578, 581-582, 557 N.W.2d 157 (1996)); *see also Friend v. North Branch,* No.

251415, 2005 WL 599705 at *2 (Mich. Ct. App. Mar. 15, 2005).

        With respect to the first prong, the court has reviewed the MVSFA and finds that

it does not expressly create a private cause of action for the violation that Plaintiff

asserts in this case.  Plaintiff relies on Mich. Comp. Laws § 492.131(d), but the court

finds, as did the *Lozada* court, that § 492.131(d) provides a private remedy only to

recoup or void "prohibited charges."  There is nothing in that provision indicating that

either (1) any fees charged by an unlicensed individual are "prohibited" or (2) that any

charges imposed by someone who has violated the act in any way (such as by failing to

obtain a license) are "prohibited."  Accordingly, there is no express private cause of

action for failing to obtain a license.  Plaintiff can maintain this action against

Defendants only if the court finds that "a cause of action can be inferred from the fact

that the statute provides no adequate means of enforcement of its provisions. *Pitsch*,

233 Mich. App. at 586-587, 593 N.W.2d at 570.

        Plaintiff implicitly argues that this inference is appropriate when he argues that a

private cause of action must be implied in the statute in order to ensure the "proper

functioning" of the MVSFA.[10]  (Pl.'s Resp. Br. at 12.)  The statute, however, can still encourage licensing, regardless of whether a civil remedy exists, because the MVSFA contains a broad criminal penalty for noncompliance.  *See* Mich. Comp. Laws § 492.137 ("Any person . . . who  . . . shall wilfully or intentionally engage in this state in business as [an] installment seller or sales finance company as defined in this act without having obtained a license, as required under this act, shall be guilty of a misdemeanor, and upon conviction thereof shall be sentenced to pay a fine of not more than $5,000.00, or to suffer imprisonment of not more than 3 years, or both, at the discretion of the court."). In the absence of an express provision allowing a private cause of action, the criminal penalty for engaging in business without a license actually *precludes* a private cause of action.  *See Wallad v. Access BIDCO, Inc.,* 236 Mich. App. 303, 307-308, 600 N.W.2d 664, 667 (Mich. Ct. App. 1999) (citing *Claire-Ann Co. v. Christenson & Christenson, Inc.,* 223 Mich. App. 25, 566 N.W.2d 4 (1997).) ("[A] private party cannot maintain an action to enforce a statute if the statute sets up a public enforcement mechanism and creates new rights that did not exist at common law.").  The court need not--indeed cannot--imply a private cause of action for failure to obtain a license when the MVSFA

---

[10]In support of this argument Plaintiff relies on *Stokes v. Millen Roofing Co.,* 466 Mich. 660, 649 N.W. 2d 371 (2002), but the court finds *Stokes* inapposite.  In *Stokes*, the Michigan Supreme Court found that an unlicensed residential builder could not maintain an action to recover the reasonable value of its labor and materials.  *Id.* at 665-66.  This holding was compelled, however, in light of the express and unambiguous language of the Residential Builders Act, Mich. Comp. Laws § 339.2412(1), which provides that "[a] person . . . shall not bring or maintain an action . . . for the collection of compensation for the performance of an act or contract for which a license is required by this article . . ."  Mich. Comp. Laws § 339.2412(1).  The MVSFA, in contrast, contains no such express language prohibiting charges above the principal by unlicensed individuals or creating a cause of action against unlicensed individuals.

provides a public enforcement mechanism, in the form of criminal penalties, for such

violation.  This conclusion is also buttressed by a recent opinion of the Michigan Court

of Appeals which, though reserving a ruling on the existence of a private cause of

action, noted that the MVSFA's criminal penalty and statutory history indicated that the

statute was regulatory in nature.  *King v. Ford Motor Credit Co.,* 257 Mich. App. 303,

318, 668 N.W.2d 357, 366 (Mich. Ct. App. 2003).   In *King,* the court stated:

> An entity that operates under the act without a license or a licensee that
> violates the act may be found guilty of a misdemeanor and sentenced to
> pay a fine of not more than $500 for the first offense, and face
> imprisonment, not to exceed a year, for subsequent offenses.  MCL
> 492.137.  Thus, an overall review of the statute reveals that it is
> regulatory, setting forth the licensing and procedural fees charged in the
> sale of a motor vehicle through an installment sale contract without
> restricting the parties' ability to negotiate the terms of the sale or the profit
> margin earned on the sale.

*King,* 257 Mich. App. at 318, 668 N.W.2d at 366; *see also id.* ("In essence, the MVSFA

is a regulatory statute . . .").  Thus, there is no express private cause of action in the

MVSFA and, further, one cannot not be inferred because the statute provides an

adequate means of enforcement of its provisions.  *Pitsch*, 233 Mich. App. at 586-587,

593 N.W.2d at 570; *see also Wallad,* 236 Mich. App. at 307-308, 600 N.W.2d at 667.

Accordingly, the court finds that Michigan law does not allow Plaintiff a private

cause of action as a result of any damages allegedly incurred by Midland Funding's lack

of license.

**2.  The Application of the MVSFA**

13

Defendants also argue that, even if a private cause of action exists within the MVSFA, Plaintiff's claim nonetheless fails because the MVSFA does not require Midland Funding to obtain a license.

The Michigan Court of Appeals has recently reviewed the text and legislative history of the MVSFA and found that "the MVSFA was designed to address usurious fees and improper conduct that occurred in the financing of an automobile." *King,* 257 Mich. App. at 316, 668 N.W.2d at 365. The Michigan court's "review of the statute reveals that its predominant purpose is to set forth licensing and procedural requirements governing a motor vehicle installment sale. Briefly, a person may not engage in the sale of motor vehicles under installment contracts unless the seller is licensed in accordance with the terms of the act." *Id.* at 316-317, 668 N.W.2d at 365.

The parties here dispute whether Midland Funding's activities required it to obtain and maintain a license under the MVSFA. The MVSFA provides:

> Except for a person licensed under the consumer financial services act, a person shall not engage in this state as a principal, employee, agent, or broker in either of the following unless that person is licensed as provided in this act:
>
>> (a) The business of an installment seller of motor vehicles under installment sale contracts.
>>
>> (b) The business of a sales finance company.

Mich. Comp. Laws § 492.103. There appears to be no contention that Midland Funding is an "installment seller," and thus the only way Midland Funding falls under the purview of the MVSFA is if it is engaged "as a principal, employee, agent, or broker" in "[t]he business of a sales finance company." *Id.* The MVSFA defines "sales finance company" as follows:

> "Sales finance company" means a person engaged as principal, agent, or broker in the business *of financing or soliciting the financing of installment sale contracts made between other parties, and includes the business of acquiring, investing in, or lending money or credit on the security of the retail seller's interest in such contracts* whether by discount, purchase, or assignment of those contracts, or otherwise. The term does not include a person, financial institution, or sales finance company that takes assignments of, or an interest in, an aggregation of installment sale contracts only as security for bona fide commercial loans under which, in the absence of default or other bona fide breach of the loan contract, ownership of the contracts remains vested in the assignor and collection of payments on the contracts is made by the assignor, nor a person who purchases installment sale contracts from a sales finance company or a financial institution. The term includes a person, whether or not licensed under this act, who as a seller finances installment sale contracts for other sellers or sales finance companies. The term includes a financial institution.

Mich. Comp. Laws § 492.102 (6) (emphasis added).  Plaintiff focuses on the italicized portion, arguing that Midland Funding fits squarely within this definition because Midland Funding is in the business of "investing in retail installment contracts or soliciting such business, as by acquiring those contracts."  (Pl.'s Resp. Br. at 16.)  Midland Funding, however, distinguishes its business from this definition because it asserts that it is in the business of acquiring not retail installment contracts, but charged-off accounts.  (Defs.' Br. at 5.)  Indeed, this fact is undisputed by Plaintiff.  (*See* Pl.'s Statement of Undisputed Facts # 1.)   To that end, Defendants claim that it is entities such as Household, who first purchased Plaintiff's installment contract from Crippen Automall, who would fall within the definition upon which Plaintiff relies.

Instead, Defendants assert, and the court agrees, that Midland Funding's activities fall within an express exclusion from the definition of "sales finance company." Specifically, the definition states that "[t]he term does not include . . . a person who purchases installment sale contracts from a sales finance company or financial

institution." Mich. Comp. Laws § 492.102(6). There is no dispute Midland Funding acquires accounts such as Plaintiff's as charged-off receivable portfolios at discounts from their face values and that Midland Funding primarily purchases them from national financial institutions, major retail corporations and other owners of such portfolios. (Defs.' Mot. Br. at 2-3.) There is similarly no dispute that Plaintiff's contract was sold from Crippen Automall to Household, from Household to Palisades, and from Palisades to Midland Funding. (*Id.*) Based on the plain language of the statute, Midland Funding's activities in buying the charged-off account in a portfolio from Palisades are expressly excepted from the licensing requirements of the MVSFA. *Putkamer v. Transamerica Ins. Corp. of America,* 454 Mich. 626, 631, 563 N.W.2d 683, 686 (Mich. 1997) ("Where the language of a statute is clear and unambiguous, the courts must apply the statute as written."). The Michigan legislature has opted to exclude secondary buyers, under situations present in the instant case, from the licensing requirements of the MVSFA.[11] Accordingly, the court finds as a matter of law that Midland Funding is not a "sales finance company" as defined under the MVSFA.

Defendants further argue that Plaintiff's complaint cannot succeed because Midland Funding does not "do business" in Michigan. Specifically, in Defendants' motion, they hypothesized that Plaintiff's complaint likely relies on Section 115(a) of the MVSFA, which provides that:

---

[11]As Defendants suggest, this could be because the MVSFA "was designed to address usurious fees and improper conduct that occurred in the financing of an automobile." *King,* 257 Mich. App. at 316, 668 N.W.2d at 365. The legislature, therefore, could have focused more on the initial transaction than subsequent sales of the defaulted loans, likely because it is the initial transaction that creates the terms of the contract.

Whenever an installment sale contract is lawfully sold, transferred or assigned to a person who is licensed as a sales finance company, pursuant to the provisions of this act, such new holder shall furnish to the buyer in such contract a written notice of such sale, transfer or assignment, excepting when assignment is made only to secure a bona fide commercial loan or pursuant to a bulk sale of installment sale contracts. Such notices shall set forth the name and address of the new holder and shall notify the buyer of the name and address of the person authorized to receive future payments on such contract. If such notice has not been given, any payment or tender of payment made to and any service of notice on the last known holder by the buyer shall be binding upon any subsequent holder. *No installment sales contract shall be sold to any person doing business in this state who is not licensed under the provisions of this act.*

Mich. Comp. Laws § 492.115(a) (emphasis added).  Defendants argue that, to the extent Plaintiff relies on this provision, it is not applicable because Midland Funding is not "doing business" in Michigan.  Midland Funding asserts that it has no employees, property or place of business in Michigan.  (Defs.' Mot. Br. At 15.)  Rather, it contends that it merely purchases and holds portfolios of charged-off accounts for loan financing purposes.  (*Id.*)[12]

In response, Plaintiff contends that Midland Funding's activities in filing lawsuits in Michigan and engaging agents (*i.e.,* Midland Credit) to collect on its contracts constitute "doing business."  (Pl.'s Resp. Br. at 18.)  The court disagrees.[13]

_____

[12]The court also notes that, while Defendants did not raise this argument, this provision prohibits *selling* contracts to unlicensed individuals.  It does not, on its face, prohibit *buying* the contracts as an unlicensed buyer.  While this may seem like a distinction without a difference, it nonetheless bears noting.  Even if a private cause of action exists, and even if the selling of Plaintiff's contract violated this provision, it appears that Plaintiff would have a cause of action against Pallisades (the seller), rather than Midland Funding (the buyer).

[13]Plaintiff also argues that Defendants' construction of the term "doing business" cannot be squared with Mich. Comp. Laws § 492.104(3), which applies to licensee applicants who do not maintain an office in the state of Michigan.  The court rejects this

There is no definition of the term "doing business" found within the MVSFA. Thus, Defendants suggest that the court look to other Michigan statutes for an indication of how the Michigan legislature would define "doing business."  Defendants cite an unpublished Michigan Court of Appeals case for the proposition that "the terms of one statute can be taken as a factor in determining the interpretation of another statute." *Federal Financial Co. v. Papas*, No. 248574, 2004 WL 2624853, *3 (Mich. Ct. App. Nov. 18, 2004) (citing *Louis A Demute, Inc v Michigan Employment Security Comm,* 339 Mich. 713, 721-722; 64 NW2d 545 (1954)).  Indeed, while attempting to determine whether the plaintiff's debt collection activity constituted "carrying on any business" within the meaning of the statutes at issue in that case, the Michigan court looked to similar language in other statutes:

> While neither MCL 449.101 *et seq.,* nor the Uniform Partnership Act, MCL 449.1 *et seq.,* define "carrying on any business," Michigan's Business Corporation Act (BCA), MCL 450.1101 *et seq.,* provides that "transacting business in this state" does not include "[s]ecuring or collecting debts...." MCL 450.2012(1)(h) ("a foreign corporation is not considered to be transacting business in this state, for the purposes of this act, solely because it is ... [s]ecuring or collecting debts...."). Likewise, article 9 of the revised Uniform Limited Partnership Act (ULPA)contains similar language. MCL 449.1909(a)(8). . . .  See *Long Mfg Co, Inc v Wright-Way Farm Service, Inc,* 391 Mich. 82, 88-89; 214 NW2d 816 (1974) (With respect to carrying on a business, " '[t]he thing done must be of a character indicative of an intention on the part of the corporation to carry on its business in the state. There is implied in the term 'doing business' a continuity of act and

---

argument.  Merely because some businesses may apply for license even though they do not maintain a physical presence in the state does not conversely mean that all those who do maintain a physical presence must apply for a license.  That the MVSFA provides for certain requirements (i.e., appointing an agent upon whom service can be effected) when an entity is not physically located in Michigan does not mean that physical presence cannot be considered when determining whether an entity is "doing business."

purpose." ');

*Papas*, 2004 WL 2624853 at *3.  In light of this holding from a Michigan court addressing similar facts under similar statutory language, and in the absence of any persuasive authority to the contrary, the court holds as a matter of law that Midland Funding's activities in engaging Midland Credit to collect on its charged-off accounts, without more tangible connections to Michigan, is not sufficient to constitute "doing business" under the meaning of the MVSFA.   The court also holds as a matter of law that maintaining lawsuits in the state of Michigan likewise does not constitute "doing business."  *See* Mich. Comp. Laws § 450.2012  ("[A] foreign corporation is not considered to be transacting business in this state, for the purposes of this act, solely because it is carrying on in this state any 1 or more of the following activities: (a) Maintaining, defending, or settling any proceeding. . . . (h) Securing or collecting debts or enforcing mortgages and security interests in property securing the debts.").  Thus, the court accepts Defendants' alternative argument that Midland Funding's activities do not constitute "doing business" under the MVSFA.[14]

### C.  Remaining Claims

---

[14]  In light of the court's holding that Midland Funding has not violated the MVSFA, the court need not reach Defendants' alternative argument that the MVSFA is unconstitutional under the dormant commerce clause.  *See Dale Baker Oldsmobile, Inc. v. Fiat Motors of North America, Inc.,* 794 F.2d 213, 221 (6th Cir. 1986) ("A state statute, which has not been authoritatively construed by the state court, should be construed in a manner which will avoid such constitutional questions.")  Indeed, even if the court were to rule on this issue, the court would first provide notice to Michigan's Attorney General that the constitutionality of the MVSFA has been called into question.  *See* Fed. R. Civ. P. 24(c); 28 U.S.C. § 2403(b).

For the reasons discussed above, the court has found Defendants are entitled to summary judgment with respect to Plaintiff's claim that Midland Funding violated the MVSFA because (1) the MVSFA does not create a private cause of action and that (2) even if it did, Midland Funding did not violate the act by failing to obtain and maintain a license because it is not a "sales finance company" and was not "doing business" under the MVSFA.  The latter holding compels dismissal of all the remaining claims.

First, there is no dispute that Plaintiff's federal claim, under the FDCPA hinges on Plaintiff's claims under the MVSFA.  Specifically, Plaintiff claims that "Defendants are 'debt collectors' for purposes of the FDCPA; that contracts in question are to be held only by those with licenses under the [MVSFA] from the State of Michigan; and that Midland Funding was not licensed to hold those contracts under the MVSFA."  (Pl.'s Resp. Br. at 2.)  Plaintiff further alleges that, because of Midland Funding's lack of license, when Defendants attempted to collect finance charges, those "charges were illegal and misstated for purposes of the FDCPA."  (*Id.*)  Since the court has found as a matter of law that Midland Funding was not required to be licensed under the MVSFA, Defendants are also entitled to summary judgment on the FDCPA claim.

Moreover, it appears from the briefing that *all* of the counts fail if the MVSFA does not apply to Midland Funding.  *See* Defs.' Reply Br. at 1 ("Plaintiff's Response confirms that all of his claims against Midland Credit and Midland Funding–including those brought under the FDCPA–rely solely on his flawed theory that Midland Funding is required to be licensed under the MVSFA.").  Indeed, the court confirmed this with

20

Plaintiff's counsel during the January 11, hearing; Plaintiff's counsel acknowledged that Plaintiff's entire complaint[15]  hinges on the MVSFA claim.[16]

### V.  Motion to Strike

Finally, the court will deny Plaintiff's December 14, 2005 "Motion to Strike Documents in Support of Summary Judgment."  As with the motion to amend the complaint, filed on the same day, Plaintiff's motion to strike contains very little analysis. The court has reviewed the motion, along with Defendants' response brief, and finds that the documents of which Plaintiff complains are sufficiently authenticated for purposes of Federal Rule of Civil Procedure 56.  Moreover, the court notes that none of these documents were central to the court's analysis and the motion is therefore moot.

### VI.  CONCLUSION

IT IS ORDERED that Defendants' "Motion for Summary Judgment [Dkt. # 21] is GRANTED.

---

[15]Plaintiff's counsel also specifically confirmed that the amended complaint would also hinge on the MVSFA claim.  Thus, even if the court were to grant the motion to amend, Defendants would nonetheless be entitled to summary judgment on the amended complaint.

[16]In any event, the remaining state law claims can be dismissed for lack of subject matter jurisdiction.  The sole basis for federal jurisdiction is Plaintiff's claim under the FDCPA.   (Comp. ¶ 1).  The Sixth Circuit has directed that where federal claims are dismissed prior to trial, pendent state law claims should also normally dismissed.  *See Musson Theatrical, Inc. V. Fed. Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir. 1996).  Thus, even if Plaintiff's counsel had not affirmed that Plaintiff's remaining claims depended upon the MVSFA claim, the court would nonetheless dismiss the remaining state law claims for lack of subject matter jurisdiction because the court has granted Defendants summary judgment on the FDCPA claim.

IT IS FURTHER ORDERED that Plaintiff's "Motion for Leave to Amend

Complaint" [Dkt. # 52] and "Motion to Strike Documents in Support of Summary

Judgment" [Dkt. # 53] are DENIED.


                     S/Robert H. Cleland
                     ROBERT H. CLELAND
                     UNITED STATES DISTRICT JUDGE

Dated:  January 31, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, January 31, 2006, by electronic and/or ordinary mail.


                     S/Lisa Wagner
                     Case Manager and Deputy Clerk
                     (313) 234-5522

S:\Cleland\JUDGE'S DESK\Even Orders\04-00300.CALKINS.SJ.Strike.Amend.wpd